[Civ. No. 42334. Second Dist., Div. Three. Sept. 18, 1973.]

BARRY SANDERS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
SOUTHERN PACIFIC TRANSPORTATION COMPANY,
Real Party in Interest.

## COUNSEL

Bodle, Fogel, Julber, Reinhardt & Rothschild, Daniel Fogel and Larry R. Feldman for Petitioner.

No appearance for Respondent.

Cummins, White & Breidenbach and Wayne R. Sims for Real Party in Interest.

## OPINION

**ALLPORT, J.**—On June 21, 1973, this court ordered the issuance of an alternate writ of mandate requiring respondent court to vacate its order of May 30, 1973, conditionally granting a motion to quash subpoenas duces tecum re deposition and to make a new and unconditional order to quash or in the alternative to show cause why a peremptory writ of mandate compelling such action should not issue.

The superior court file in action number C 32155 entitled Barry Sanders v. Southern Pacific Transportation Company, of which we take judicial notice, discloses that on June 14, 1972, Barry Sanders, an employee of Southern Pacific Company, filed an action against his employer under the provisions of the Federal Employers Liability Act, 45 United States Code section 51 et seq., for personal injuries. The declarations of Sanders and his attorneys disclose that the former received his medical care and treatment for his injuries from the employer's doctors and that he was referred to Drs. Greenspahn, McCaskill and Gregg, by his attorneys "so that these

doctors could examine Barry Sanders, interpret his symptoms and inform me [attorney Feldman] what they felt was medically wrong with him." The declarations further stated that the information given to these doctors and the doctors' reports were confidential and for the purpose of trial preparation and damage evaluation. The declarations are devoid of any indication that these doctors would or would not be called upon to render care and treatment to the patient or that they or their reports would be used during trial of the action. A medical examination of Sanders by a Dr. Kempf, selected for the purpose by the employer, was scheduled for June 29, 1973. On June 1, 1973, the employer sought to obtain access to the records of Drs. Greenspahn, McCaskill and Gregg by serving subpoenas duces tecum re depositions upon the custodians of these records.

A motion to quash these subpoenas was granted on the following conditions: "The deposition of the custodian of records for Doctors Greenspahn, Gregg and McCaskill shall be quashed and vacated, and the process thereon (subpoenas duces tecum) are quashed, upon plaintiff filing and serving a declaration, in writing, stating that said doctors, or any of them, shall not be called as an 'expert witness' at the time of trial in this matter. Said declaration to be filed and served within five days. ¶ In the event that plaintiff fails to file and serve such declaration as to any or all of said witnesses, or fails to name any of said doctors in any such declaration, the custodian of records shall appear for his deposition and shall produce the records of such non-designated doctor. ¶ If the deposition should proceed as to any or all of the records of said doctors, on objection and instruction of counsel, the witness may decline and refuse to answer any questions or to exhibit any writing pertaining to any report prepared by him on the ground that the question or material calls for the work produce [*sic*] of plaintiff's counsel and relates to advice given to plaintiff's attorney concerning tactics, trial preparation, and forensic and advocacy techniques. ¶ The Court finds that the basis for granting the protective order pursuant to CCP 2019(b) is that said doctors may have been engaged as counselors and advisers and not as potential expert witnesses." Sanders seeks an order of this court vacating the conditional aspects of the order set forth above.

For obvious reasons the use of original writ procedures in the appellate courts to control discovery is a practice to be discouraged. In *Pacific Tel. & Tel. Co.* v. *Superior Court,* 2 Cal.3d 161, 169-171 [84 Cal.Rptr. 718, 465 P.2d 854], it was said: "Initially, we must consider the availability of the prerogative writ sought by the defendants in this setting. We spoke directly to the question of the circumstances that would normally justify the invocation of an extraordinary writ in discovery cases in *Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185-186, fn.

4 [23 Cal.Rptr. 375, 373 P.2d 439]: 'The prerogative writs have been used frequently to review interim orders in discovery cases [citations]. But this does not mean that these discretionary writs will or should issue as of course in all cases where this court may be of the opinion that the interim order of the trial court was erroneous. In most such cases, as is true of most other interim orders, the parties must be relegated to a review of the order on appeal from the final judgment. As inadequate as such review may be in some cases, the prerogative writs should only be used in discovery matters to review questions of first impression that are of general importance to the trial courts and to the profession, and where general guidelines can be laid down for future cases.'

". . . . . . . . . . . . . . . . . . . ."

"Nevertheless, appellate courts must keep in mind that too lax a view of the 'extraordinary' nature of prerogative writs, rendering substantial pre-trial appellate delay a usual hazard of the use of discovery, is likely to result in more harm to the judicial process than the denial of immediate relief from less significant errors. In our judgment, the lack of general import of the petitioner's objections in the instant case might well in itself have presented a persuasive ground for an immediate denial of the writ sought.[11] Since the Court of Appeal has already issued an order to show cause, however, and since the plaintiff did not raise this point either before the Court of Appeal or this court, and since the case has been fully briefed on the merits, we proceed to evaluate the main contention raised by the petition. (See *Rosemont* v. *Superior Court* (1964) 60 Cal.2d 709, 712 [36 Cal.Rptr. 439, 388 P.2d 671].)" ". . . [11] In *West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407, 415 [15 Cal.Rptr. 119, 364 P.2d 295], this court, quoting *Ryan* v. *Superior Court* (1961) 186 Cal.App.2d 813, 816-817 [9 Cal.Rptr. 147], declared: 'One of the prime purposes of the Discovery Act is to expedite the trial of the action. This purpose will be defeated if appellate courts entertain petitions for prerogative writs by which a review of the orders of trial courts in discovery proceedings are sought and which do not clearly demonstrate an abuse of discretion where discovery is denied, *or a violation of privilege or of the provisions of section 19 of article I of the Constitution of the state where discovery is granted.* This court will hereafter refuse to entertain petitions for prerogative writs in discovery matters which do not allege facts which would entitle the petitioner to the relief sought under the principles we have set forth.' (Italics added.) (See also *Flora Crane Service, Inc.* v. *Superior Court* (1965) 234 Cal.App.2d 767, 776 [45 Cal.Rptr. 79].)" Since the practice is not considered inappropriate in all cases and in view of the nature of the problem

presented herein and for reasons stated in *Pacific Tel. & Tel. Co., supra,* we reluctantly proceed to review a discovery ruling made below.

Our function in reviewing the order in question is summarized in *Pacific Tel. & Tel. Co., supra,* at page 171, as follows: "In reviewing an order of a superior court granting discovery, we recognize at the threshold that 'the discovery statutes vest a wide discretion in the trial court in granting or denying discovery' and 'such exercise [of discretion] may only be disturbed when it can be said that there has been an abuse of discretion.' (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 378, 380 [15 Cal.Rptr. 90, 364 P.2d 266].) In *Greyhound,* however, we regarded the matter sufficiently important to state clearly that in passing on orders *denying* discovery appellate courts 'should not use the trial court's discretion argument to defeat the liberal policies of the statute.' (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 378-379.) Appellate courts must keep the liberal policies of the discovery statutes equally in mind when reviewing a decision *granting* discovery. In this context, absent a showing by the petitioner that a substantial interest will be impaired by the discovery, the liberal policies of the discovery rules will generally counsel against overturning the trial court's decision granting discovery." To the extent the order in the instant case is conditional it is questionable whether or not it should be considered as one granting or denying discovery. In any event the liberal policies of the discovery statutes should be given effect in reviewing the discretionary aspects of the trial court's ruling.

While liberality of construction is to be encouraged it is nevertheless recognized that the work product of an attorney is subject to protection and is not discoverable in the absence of a showing of good cause. In *Dow Chemical Co.* v. *Superior Court,* 2 Cal.App.3d 1, 5 [82 Cal.Rptr. 288], it was said: "The Discovery Act (Code Civ. Proc., § § 2016-2036) confers upon litigants the right to take depositions without prior court order or approval and, except as to the work product of an attorney,[3] does not require any showing of good cause for the taking of depositions. (*Kramer* v. *Superior Court,* 237 Cal.App.2d 753, 755 [47 Cal.Rptr. 317].)" "[3]'The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney's impressions, conclusions, opinions or legal research or theories shall not be discoverable under any circumstances.' (Code Civ. Proc., § 2016, subd. (b).) 'It is the policy of this State (i) to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects

of such cases and (ii) to prevent an attorney from taking undue advantage of his adversary's industry or efforts.' (*Id.*, subd. (g).)" (See also *Oceanside Union School Dist.* v. *Superior Court*, 58 Cal.2d 180, 192 [23 Cal.Rptr. 375, 373 P.2d 439].)

While the case of *Swartzman* v. *Superior Court*, 231 Cal.App.2d 195 [41 Cal.Rptr. 721], involves expert witnesses in eminent domain, we believe that the rationale of the court therein is persuasive if not controlling of our decision herein. In recognizing that the role of the expert as an advisor to the attorney on matters involving trial preparation and tactics may change when the expert is employed to testify, the *Swartzman* court said at pages 202-204: "Petitioners attack the order prohibiting the taking of the deposition of the state's independent appraiser, contending that Code of Civil Procedure, section 2016, gives a party an absolute right to take the deposition of anyone at any time, and that a writ of mandate should issue to compel such discovery when denied by the trial court.

"The state argues that Code of Civil Procedure, section 2019, subdivision (b)(1), permits the trial court to control the exercise of discovery in order to make it mutual and reciprocal and fair; that it authorizes the court to enter protective orders to prevent abuses of discovery; and that justice in this case required the exercise of such control in order to preserve fairness and mutuality.

"The problem of fairness and mutuality in discovery proceedings involving an expert in advance of trial presents considerations absent from the case of the usual fact witness. The expert normally has no relevant information about the case but has been employed, usually by counsel, in the hope he can develop favorable relevant opinions on specific matters. The expert may examine specific items of evidence, such as questioned documents, anatomy in a personal injury, books and accounts in an accounting, specific machinery in a breach of warranty, or, as here, real property in a condemnation proceeding. If the expert forms an opinion on the subject, he has created potential relevant evidence, and if he later qualifies as an expert and testifies to his opinion, he has given relevant evidence.

"To complicate his position, the expert normally wears two hats. He is employed by counsel to form an opinion which he may later present as a witness in court. He is also engaged as an adviser on trial preparation and tactics for the case and in this latter capacity serves as a professional consultant to counsel on the technical and forensic aspects of his specialty. From the point of view of counsel, the expert's freedom to advise counsel, to educate counsel on the technical problems of his case, to prepare him to handle unfamiliar data in court, to analyze the availability of expert

opinion and the need for its use, all without hindrance from the opposing side, are important elements of counsel's privacy of preparation.

"Consultation between expert and counsel may appropriately be given broad immunity from discovery, both as to expert and as to counsel, because none of the expert's opinion, professional though it may be, is relevant evidence in the case. To the contrary, his opinion is and will remain wholly irrelevant and immaterial as evidence until the expert is called as a witness on the trial and shown to be qualified to give competent opinion testimony on a matter in which he is versed and which is material to the case. (*United States* v. *Certain Parcels of Land,* 15 F.R.D. 224, 233.)

"Under the general name of fairness the courts have continued to respect privacy of preparation for trial, even under the modern expansion of the machinery of discovery. This policy was made explicit in California by the addition in 1963 of Code of Civil Procedure, section 2016, subdivision (g): 'It is the policy of this State (i) to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (ii) to prevent an attorney from taking undue advantage to his adversary's industry or efforts.' Under such a policy a party cannot substitute the wits of his adversary's expert for wits of his own in analyzing the case. (*Hickman* v. *Taylor,* 329 U.S. 495, 516 [67 S.Ct. 385, 91 L.Ed. 451].)

"Coincidentally in 1963, New York adopted a comparable policy restricting disclosure of material prepared for litigation, including opinions of experts prepared for litigation. (New York, C.P.L.R. § 3101(d).)

"Nevertheless the initial status of the expert, as consultant and possible witness, changes its character at that point in the suit when it has become known he will actually testify as a witness. When it becomes reasonably certain an expert will give his professional opinion as a witness on a material matter in dispute, then his opinion has become a factor in the cause. At that point the expert has ceased to be merely a consultant and has become a counter in the litigation, one to be evaluated along with others. Such evaluation properly includes appropriate pretrial discovery. (*San Diego Professional Assn.* v. *Superior Court,* 58 Cal.2d 194 [23 Cal. Rptr. 384, 373 P.2d 448]; *Brown* v. *Superior Court,* 218 Cal.App.2d 430 [32 Cal.Rptr. 527]; *Grand Lake Drive In, Inc.* v. *Superior Court,* 179 Cal.App.2d 122 [3 Cal.Rptr. 621, 86 A.L.R.2d 129].)

"With recognition of these problems the courts have attempted to work out methods of mutual disclosure of the opinions of potential witnesses

which will achieve desired results with minimum waste motion and with fairness to all concerned. In condemnation proceedings this has taken the form of an exchange of reports of experts during the final pretrial proceedings immediately in advance of trial. The key element is mutuality. Were the courts not rigorous in insisting on mutuality of disclosure and were they to adopt a soft and wishy-washy attitude toward recalcitrant litigants reluctant to comply with their orders, they would quickly inhibit any genuine disclosure in advance of trial in the case of opinion witnesses, for parties could merely claim, as petitioners did here, they had not yet decided whether to use any expert witnesses and could continue to profess indecision until the day of trial.

"The rules of discovery contemplate two-way disclosure and do not envision that one party may sit back in idleness and savor the fruits which his adversary has cultivated and harvested in diligence and industry. Mutual exchange of data provides some protection against attempted one-way disclosure; the party seeking discovery must be ready and willing to make an equitable exchange. (*Hickman* v. *Taylor,* 329 U.S. 495 [67 S.Ct. 385, 91 L.Ed. 451]; *Oceanside Union School Dist.* v. *Superior Court,* 58 Cal.2d 180, 192 [23 Cal.Rptr. 375, 373 P.2d 439]; *Ryan* v. *Superior Court,* 186 Cal.App.2d 813 [9 Cal.Rptr. 147].)

"In this case no good cause was shown for the taking of the deposition of the state's potential expert witness in advance of the exchange of appraisal data ordered by the court. In the case of expert opinion witnesses good cause normally must be shown to compel a deposition in advance of trial, and in the absence of good cause a motion to quash the deposition is justified. (*Grand Lake Drive In, Inc.* v. *Superior Court,* 179 Cal.App.2d 122, 130-131 [3 Cal.Rptr. 621, 86 A.L.R.2d 129].)"

██ Bearing in mind that an expert witness may, upon a showing of good cause, be deposed prior to trial we now endeavor to apply these principles to the facts of the case at bench. The only declarations before us, being those offered by the employee, establish that the records sought by the employer were requested and prepared for use by counsel in trial preparation and are thus clearly work product and not discoverable. No showing of good cause necessitating revelation of the contents of the records or the opinions of Drs. Greenspahn, McCaskill and Gregg has been made or even attempted. While the declarations do not eliminate the distinct possibility that these doctors may be called upon to testify in court, there was nothing before the trial court nor is there anything before us supporting such a conclusion. Under such circumstances that portion of the trial court's order quashing the subpoenas duces tecum was proper. (See *Scotsman Mfg. Co.* v. *Superior Court,* 242 Cal.App.2d 527 [51 Cal.Rptr. 511].)

In making the order conditional the trial court recognized that "the initial status of the expert, as consultant and possible witness, changes its character at that point in the suit when it has become known he will actually testify as a witness" requiring that his testimony be evaluated along with that of others and therefore subjecting him to appropriate pretrial discovery procedures. As was said in *Bolles* v. *Superior Court*, 15 Cal. App.3d 962 at page 963 [93 Cal.Rptr. 719], "As Barton has stated its intention to call Nicholson as a witness, the work product privilege is inapplicable. (*Scotsman Mfg. Co.* v. *Superior Court* (1966) 242 Cal. App.2d 527, 530-532 [51 Cal.Rptr. 511].)" ■ We conclude that the information and opinion of an expert respecting the subject matter about which he is a prospective witness are subjects of discovery by interrogation or deposition procedures and, if submitted in a report confined thereto, by production of such a report. ■ However, as was said in *Swartzman, supra,* "In the case of expert opinion witnesses good cause normally must be shown to compel a deposition in advance of trial, and in the absence of good cause a motion to quash the deposition is justified." Good cause includes a showing that the expert may be called as a witness. Since, as pointed out above, no good cause has been shown in the instant case for the taking of the depositions at this time the imposing of the conditions in the order referred to was an abuse of discretion. The practicalities of the situation compel brief consideration of a case wherein parties claim that no decision has been reached as to the use of an expert witness and continue to profess indecision to the date of trial. This was envisioned in *Swartzman, supra,* and commented on in *Scotsman Mfg. Co., supra,* at page 532, as follows: "If, as asserted in the instant case, petitioner is unwilling to declare its intention respecting the prospective status of Dr. Morelli as an expert witness, the trial court, in an appropriate proceeding, would be authorized to permit discovery by interrogation or deposition. (*Swartzman* v. *Superior Court, supra,* 231 Cal.App.2d 195, 204-205.)" ■ We hold that, upon a showing of good cause made at an appropriate stage of the proceedings, e.g., the pretrial hearing at which time discovery is presumably complete, the case at issue and ready for trial setting, a party may be required to elect whether or not to call the expert as a witness and to disclose such election to his adversary. If he elects to do so, the opposing party shall be granted a reasonable time thereafter within which to conduct appropriate additional discovery directed at securing the desired information.

While we have not been referred to any California cases affording the work product protection to medical expert witnesses in a personal injury action, we see no compelling reason to make a distinction with respect to them as to the matters under consideration in the instant case. The

physician-patient privilege does not exist and cannot be invoked. (Evid. Code, § 996; *City & County of S. F.* v. *Superior Court,* 37 Cal.2d 227, 231-232 [231 P.2d 26, 25 A.L.R.2d 1418].) While the *San Francisco* case holds that information conveyed by the examining physician to the attorney is privileged under Code of Civil Procedure section 1881 subdivision (2),[1] the confidential nature of the communication is gone once it is determined that the physician is to be a witness—the patient having impliedly, if not actually, consented to the disclosure of the information given to the attorney by way of the physician. (Evid. Code, §§ 912, 952.) **(6)** As was said in *City & County of S. F.* v. *Superior Court, supra,* at pages 234-235: "This privilege is strictly construed, since it suppresses relevant facts that may be necessary for a just decision. [Citations.] It cannot be invoked unless the client intended the communication to be confidential [citations], . . ."

While the order of the trial court encompasses a consideration of the concepts discussed herein, the conditions in the order are prematurely imposed.

A peremptory writ of mandate shall issue forthwith ordering the superior court to vacate its order of May 30, 1973, and to make a new and different order unconditionally granting the motion of plaintiff Barry Sanders to quash subpoenas duces tecum re deposition served on custodians of the records of G. M. Greenspahn, M.D., Daniel McCaskill, M.D., and Hal Gregg, M.D.

Ford, P. J., and Cobey, J., concurred.

---

[1]Now Evidence Code sections 952 and 954.