[No. B167889. Second Dist., Div. One. Aug. 28, 2003.]

DOUGLAS SHOOKER et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
GARY WINNICK et al., Real Parties in Interest.

COUNSEL

Howarth & Smith, Don Howarth, Suzelle M. Smith and David K. Ringwood for Petitioners.

No appearance for Respondent.

Alschuler Grossman Stein & Kahan, Marshall B. Grossman, John A. Schwimmer and Ryan S. Hedges for Real Parties in Interest.

OPINION

**VOGEL (MIRIAM A.), J.—** █ We hold in this writ proceeding that the designation of a party as an expert trial witness is not in itself an implied waiver of the party's attorney-client privilege. If the designation is withdrawn before the party discloses a significant part of a privileged communication (as in this case), or before it is known with reasonable certainty that the party will actually testify as an expert, the privilege is secure; if the party produces privileged documents or testifies as an expert (such as by stating his opinion), the privilege is waived.

FACTS

A.

In the early 1990's, Douglas Shooker became a "managing director" (a venture capital partner) at Pacific Capital Group, Inc., a corporation owned by Gary Winnick. In 1993, Shooker and Winnick allegedly entered a partnership agreement. The essence of the deal as it is now characterized by Shooker was that he would not receive a salary from Pacific Capital or the partnership but would receive a 15 percent interest in partnership ventures pursued while Shooker was a managing director at Pacific Capital. One such venture was Telecommunications Development Corporation (TDC), which involved the development and construction of an international telecommunications network. Shooker left Pacific Capital in 1994.

In 1999, Shooker "read about a company called Global Crossing ... in which Winnick was a principal. Struck by the seeming similarities between Global Crossing and TDC, Shooker began to research Global Crossing's background and business. Upon further research, Shooker learned that Global Crossing was TDC." In August 2000, Shooker (and his corporation, which is included in our subsequent references to Shooker) sued Winnick (and Pacific Capital, which is included in our subsequent references to Winnick), for

breach of their partnership agreement, breach of fiduciary duty, constructive fraud, and conversion.[1] Winnick answered and discovery ensued.

### B.

In July 2002, by which time both sides had conducted substantial discovery and a discovery referee (Honorable Jerry K. Fields, retired judge of the Los Angeles County Superior Court) had been appointed, Shooker designated six expert trial witnesses, including himself. (Code Civ. Proc., § 2034.) The designation stated that Shooker was "expected to testify concerning the development of the project known as TDC, the relationship between that project and Global Crossing, and the formation of Global Crossing." Winnick responded with a subpoena to Shooker to testify at a deposition and produce documents in his capacity as an expert witness.

Shooker appeared for his deposition and produced four binders filled with documents culled from the tens of thousands previously produced in this litigation, plus five charts he had prepared to summarize those documents. Soon after the deposition began, questions from Winnick's lawyer about Shooker's conversations with his former lawyers (who were at that point still representing Shooker) drew objections from Shooker on the grounds of attorney-client privilege and work product. Winnick claimed that, by designating himself as an expert, Shooker had waived the attorney-client privilege. Shooker disagreed, and the deposition was soon continued, then suspended to permit Shooker to seek a protective order. No privileged information was disclosed.[2]

### C.

Shooker's motion for a protective order was referred to Judge Fields, who concluded the motion should be denied because Shooker had "waived the attorney-client privilege because [his] testimony *will* necessarily disclose a significant part of the privileged communication with respect to all communications relating to the subject of his expert testimony." (Italics added.) In Judge Fields's opinion, the designation itself constituted an implied waiver and disclosure was irrelevant. Shooker filed objections to Judge Fields's

---

[1] Shooker was originally represented by two law firms, Milberg Weiss Bershad Hynes & Lerach LLP, and Browne & Woods LLP. Both firms later withdrew, and Shooker is now represented by Howarth & Smith. Subsequent references to Shooker's "former lawyers" are to Milberg Weiss and Browne & Woods.

[2] At oral argument, Winnick's lawyer insisted that Shooker submitted a "report" and testified about his "opinion" before the deposition was adjourned. We disagree. Shooker testified that he prepared his charts (which he and the lawyers sometimes referred to as a "report") from previously disclosed documents, and no opinions were stated.

report and requested a hearing. In late January 2003, for reasons apparently unrelated to the privilege issue, Shooker's former lawyers withdrew and were replaced by his current counsel.

On March 3, Shooker served notice that he was withdrawing his designation of himself as an expert witness. On March 7, Shooker asked the trial court for an opportunity to submit further briefs to Judge Fields to explain that the designation had been withdrawn. Winnick objected, and the trial court (on March 18) adopted Judge Fields's report and denied Shooker's request for a protective order. On April 7, Shooker filed a motion for reconsideration on the ground that his withdrawal of his expert designation was a "new and different fact" within the meaning of subdivision (a) of section 1008 of the Code of Civil Procedure. Around the same time, Winnick filed a motion for permission to resume Shooker's deposition, and that motion was heard by Judge Fields on April 14. Judge Fields rejected Shooker's contention that the withdrawal preserved the privilege and concluded again that the designation itself constituted an implied waiver, notwithstanding the fact that no privileged information had been disclosed before the withdrawal. Judge Fields recommended that the court order Shooker to submit to a resumed deposition. Shooker filed objections.

On May 8, Shooker's motion for reconsideration was summarily denied, and Judge Fields's latest report was approved and adopted. Winnick immediately sent notices to the custodians of records for Shooker's former lawyers and went about scheduling Shooker's resumed deposition. Shooker, in turn, filed the petition for a writ of mandate now before us. We issued an order to show cause, stayed proceedings in the trial court, and set the matter for hearing.

## DISCUSSION

Shooker contends his attorney-client privilege was not waived (impliedly or otherwise) by the designation, that he did not disclose any confidential information before he withdrew his designation, and that he is entitled to the full protection of the privilege. We agree.

### A.

"The attorney-client privilege has been a hallmark of Anglo-American jurisprudence for almost 400 years. [Citations.] The privilege authorizes a client to refuse to disclose, and to prevent others from disclosing, confidential communications between attorney and client. [Citation.] Clearly, the fundamental purpose behind the privilege is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters.

[Citation.] In other words, the public policy fostered by the privilege seeks to insure 'the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense.' [Citation.]" (*Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 599 [208 Cal.Rptr. 886, 691 P.2d 642]; see also *Southern Cal. Gas. Co. v. Public Utilities Com.* (1990) 50 Cal.3d 31, 37 [265 Cal.Rptr. 801, 784 P.2d 1373].)

■ The privilege may be lost by an express or implied waiver. Subdivision (a) of section 912 of the Evidence Code provides that "the right of any person to claim [the attorney-client privilege] is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure ...." (*Roberts v. Superior Court* (1973) 9 Cal.3d 330, 343 [107 Cal.Rptr. 309, 508 P.2d 309] [the waiver of a privilege must be a voluntary and knowing act done with sufficient awareness of the relevant circumstances and likely consequences].)

B.

■ The act of designating any expert trial witness (party or nonparty) is conditional, not absolute. (*County of Los Angeles v. Superior Court* (1990) 222 Cal.App.3d 647, 657 [271 Cal.Rptr. 698] [a party may, "for tactical reasons" and in its *own* interest, withdraw a previously designated expert not yet deposed]; *Sanders v. Superior Court* (1973) 34 Cal.App.3d 270, 279 [109 Cal.Rptr. 770] [the initial status of an expert as a " ' *possible witness*' " changes character " '*when it has become known he will actually testify as a witness*,' " and the information and opinion of the expert are *discoverable when he attains the status of "prospective witness"*], italics added.)

In *County of Los Angeles v. Superior Court, supra,* 222 Cal.App.3d 647, a medical malpractice action, the County designated a pathologist as one of its experts but withdrew the designation before the doctor was deposed. When the plaintiff then designated the pathologist, the County moved to disqualify the plaintiff's lawyer and for other relief, claiming the doctor was still its consultant, that his opinions were the County's work product and that the doctor had disclosed privileged information to the plaintiff's lawyer. (*Id.* at pp. 650–651.) In that context, the court held that "*once it appears reasonably certain that the consultant-expert 'will give his ... professional opinion as a witness on a material matter* in dispute,' the attorney's work product privilege terminates and the expert's knowledge and opinions are subject to discovery and disclosure." (*Id.* at pp. 654–655, italics added.) The court

granted the requested relief. (*Id.* at p. 658; see also *Squealer Feeds v. Pickering* (Iowa 1995) 530 N.W.2d 678, 685 [relying on *County of Los Angeles* and holding that "withdrawal of the expert witness designation prior to the disclosure of any confidential communications would ... constitute a withdrawal of the implied waiver" and "would reestablish the attorney-client privilege if no express waiver has yet occurred"].)

There is only one other relevant case, *National Steel Products Co. v. Superior Court* (1985) 164 Cal.App.3d 476 [210 Cal.Rptr. 535], an action against a steel manufacturer alleging that it had negligently designed a building. The plaintiff wanted to discover an engineering report prepared by the manufacturer's expert trial witness for a New York case arising out of the construction of a similar building, and the trial court permitted the discovery. In response to the plaintiff's contention that the privilege was waived "by identifying the expert as a witness" (*id.* at p. 484), the court had this to say: " 'If the client calls his attorney as a witness to testify to matters that the attorney could only have learned through the attorney-client relationship, he waives the privilege ....' [Citations.] It follows that the same waiver exists when an *agent* of the attorney is to testify to matters that he could only have learned because of the attorney-client relationship. This is essentially the holding of *Sanders* v. *Superior Court*[, *supra*,] 34 Cal.App.3d 270, 280 [109 Cal.Rptr. 770] ..., wherein it was held that the confidential nature of the communication is gone *once it is determined that the expert is to be a witness* —the client having impliedly, if not actually, consented to the disclosure of the information given to the attorney by way of the expert. (See Evid. Code, § 912, subd. (a).)

"Just prior to its holding regarding waiver of the attorney-client privilege, and after a discussion of the work-product privilege, *Sanders* v. *Superior Court, supra*, 34 Cal.App.3d at page 279, held that *if the party elects to '... call the expert as a witness* ... the opposing party shall be granted a reasonable time thereafter within which to conduct appropriate additional discovery directed at securing the desired information.' That this language is not later qualified indicates that it is applicable to both the work product and attorney-client privileges. [¶] ... [¶]

"Accordingly, we hold here applicable the conclusion of *Sanders* that '... the information and opinion of an expert respecting the subject matter about which he is a *prospective witness* are subjects of discovery by interrogation or deposition procedures and, if submitted in a report confined thereto, by production of such a report.' (*Sanders* v. *Superior Court, supra*, 34 Cal.App.3d at p. 279.) ... [¶] In addition, because the expert's *prospective testimony* will necessarily disclose a 'significant part' of the privileged communication to the expert, the privilege is waived with respect to all

communications to that expert. (Evid. Code, § 912, subd. (a).)" (*National Steel Products Co. v. Superior Court, supra,* 164 Cal.App.3d at pp. 484–485, italics added, fn. omitted; see also *Shadow Traffic Network v. Superior Court* (1994) 24 Cal.App.4th 1067, 1079 [29 Cal.Rptr.2d 693].)

## C.

■ The rule we deduce from the cases is this: The designation of a party as an expert trial witness is not in itself an implied waiver of the party's attorney-client privilege because his initial status is that of a possible expert witness. If the designation is withdrawn before the party discloses a significant part of a privileged communication (as in this case), or before it is known with reasonable certainty that the party will actually testify as an expert, the privilege is secure; if the party provides privileged documents or testifies as an expert (such as by stating his opinion in a declaration or at a deposition) the privilege is waived. (*Sanders v. Superior Court, supra,* 34 Cal.App.3d 270, 279; *County of Los Angeles v. Superior Court, supra,* 222 Cal.App.3d at pp. 654–655; *Tennenbaum v. Deloitte & Touche* (9th Cir. 1996) 77 F.3d 337, 341 [in determining whether the privilege has been waived, the "triggering event is disclosure, not a promise to disclose"]; *Lohman v. Superior Court* (1978) 81 Cal.App.3d 90, 95 [146 Cal.Rptr. 171] ["the intent to disclose does not operate as a waiver, waiver comes into play after a disclosure has been made"].)

As we have shown, in each case in which discovery was allowed, the expert had advanced from his initial role as a *possible* trial witness to the role of *prospective* trial witness, and no effort had been made by the proponent to withdraw the designation of that expert as a trial witness—even after the privilege issue was raised. ■ In this case, Shooker—a party who designated himself as an expert—appeared for his deposition but recognized the privilege issue before he did anything more than identify his charts and the previously disclosed documents he had brought with him, and no confidential information was disclosed, let alone a significant part of a confidential communication. (*Maas v. Municipal Court* (1986) 175 Cal.App.3d 601, 606 [221 Cal.Rptr. 245] [a client does not waive the attorney-client privilege simply by testifying to facts which might have been discussed in confidential conversations with his lawyer].)[3] On the facts of this case, Shooker is entitled to the relief he seeks.

---

[3] Our conclusion that there was no disclosure makes it unnecessary to consider any issues about the scope of a waiver when disclosure occurs. (See Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2000) ¶ 8:1907 et seq., p. 8E-14.)

## DISPOSITION

The petition is granted, the stay is vacated, and a peremptory writ shall issue commanding the trial court (1) to vacate its orders of March 18 and June 9, 2003, to the extent those orders include findings that Shooker has waived the attorney-client privilege, (2) to vacate its order of June 9 to the extent that order (a) permits Winnick to proceed with Shooker's deposition in Shooker's capacity as an expert, and (b) permits Winnick to subpoena or otherwise obtain privileged records from Shooker's former lawyers, and (3) to enter a new order reflecting that Shooker has not waived the attorney-client privilege. The parties are to pay their own costs of these writ proceedings.

Spencer, P. J., and Ortega, J., concurred.

A petition for a rehearing was denied September 12, 2003, and the petition of real parties in interest for review by the Supreme Court was denied November 25, 2003. George, C. J., and Brown, J., did not participate therein.