Filed 6/16/15  Hibard v. Hibard CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JACK HIBARD, | B255066 |
| Plaintiff, Cross-Defendant and Appellant, | (Los Angeles County Super. Ct. No. BC494063) |
| v. | |
| GEORGE HIBARD, JR. et al., | |
| Defendants, Cross-Claimants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Joseph R. Kalin, Judge.  Affirmed.

Briggs & Alexander, Peter Sunukjian and Jeffrey Weber for Plaintiff and Appellant.

RB Pierce and Ronald B. Pierce, for Defendants and Respondents.

_____

This case involves a dispute over the ownership of Spiral Paper Tube & Core Co., Inc. (Spiral Paper), a family business owned by members of the Hibard family.[1]  The business was started in 1950 by brothers Jack and George Sr., who together owned 100 percent of its stock, although George Sr. held the majority interest.  In 2003, George Sr. gifted his stock to his son, George Jr., as trustee of the George Jr. family trust, and George Jr. took control of Spiral Paper.  In 2012, George Sr. passed away.  The current dispute is between Jack on one side and his nephew George Jr. and Spiral Paper on the other.  Jack brought suit alleging that:  (1) pursuant to an agreement he had signed with George Sr. at the time of Spiral Paper's incorporation (the 1972 Agreement), the stock originally owned by George Sr. and now held by George Jr. actually reverted at the former's death to George Sr.'s estate, from which it should have been offered for sale to Jack; and (2) George Jr. mismanaged Spiral Paper to his own individual benefit and to Jack's detriment as minority shareholder.  Spiral Paper responded with a cross-complaint, seeking specific enforcement of a written contract by which Jack had agreed to sell his stock back to Spiral Paper (the 2012 Agreement).  The matter proceeded to trial.  At the close of the evidence, the trial court ruled in favor of Spiral Paper on its equitable cross-complaint, and ordered specific performance of the 2012 Agreement.  Further concluding that this ruling resolved all of the issues raised by Jack's complaint, the trial court dismissed the jury and entered judgment in favor of George Jr.  Jack appeals.  Finding no cognizable error, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Our understanding and recitation of the facts is limited by the partial record Jack has provided on appeal.  There was no court reporter at the trial; therefore, there is no reporter's transcript.  Jack has not chosen to obtain an agreed (Cal. Rules of Court, rule 8.134) or settled statement (Cal. Rules of Court, rule 8.137) in lieu of a reporter's transcript (rule 8.120(b)).  The failure to provide a reporter's transcript means, among

---

[1]     As all individual parties to this case share the Hibard name, we refer to them by their first names only.  No disrespect is intended.

2

others, we must presume the existence of substantial evidence to support whatever findings were necessary to the court's decision.  (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.)

1.      *The Parties*

Jack initially named as individual defendants George Jr., Summer, Sarah, Emily and Darci.  George Jr., Summer, and Sarah are the beneficiaries of the George Jr. family trust.[2]  At the commencement of trial, Jack dismissed his complaint with prejudice against Summer, Sarah, Emily and Darci.  We mention them here as Jack challenges certain pretrial and trial rulings relating to them and the testimony they gave.  The parties that remained were George Jr., George Jr. as executor for George Sr.'s estate, George Jr. as trustee of the George Jr. family trust (collectively, George Jr.) and Spiral Paper.

2.      *The 1972 Agreement*

Several of Jack's causes of action against George Jr. were based on the 1972 Agreement.  That agreement was an exhibit to Jack's complaint.  The parties to the 1972 Agreement were Spiral Paper, George Sr. and Jack.  At that time, George Sr. held 584 shares of Spiral Paper while Jack held the remaining 416 shares.  The 1972 Agreement was a restriction on George Sr.'s and Jack's ability to transfer their shares in Spiral Paper. George Sr. and Jack agreed that, except as provided in a paragraph identifying "PERMITTED TRANSFERS," no shareholder could sell or transfer his shares without first offering the shares to the corporation and, if the corporation was unwilling to purchase, then to the remaining shareholders.  A similar provision provided that, after the death of any shareholder, the corporation shall have the option to redeem all of the decedent's stock, and should it choose not to do so, the remaining shareholder may purchase the shares.  However, the "PERMITTED TRANSFERS" paragraph provides: "Any shareholder may make a gift of shares to his spouse, issue, or other members of his

---

[2]      At one time, it appears that Sarah may have been co-trustee with George Jr. of the George Jr. family trust.

3

immediate family, or to a trust for his or their benefit. The donee shall hold such shares subject to all of the provisions hereof, and shall make no further transfer by way of gift to such a trust or to members of said family."

George Sr. transferred his shares to the George Jr. family trust in 2002 or 2003. Jack takes the position that, pursuant to the 1972 Agreement, George Sr. had only been permitted to transfer *control over his stock during his lifetime*, and that, once George Sr. passed away in 2012, George Sr.'s stock reverted to his estate and should have been offered for redemption to Spiral Paper and/or for sale to Jack. George Jr. disagrees, arguing that the transfer in 2003 was a permitted outright gift and that Jack's new interpretation of the 1972 Agreement was never raised in connection with the gifts or at all during George Sr.'s lifetime.

3.      *The 2012 Agreement*

George Jr.'s management of Spiral Paper was not to Jack's liking. Jack believed, for example, that George Jr. and his family were being paid excessive salaries out of Spiral Paper's revenues, which reduced or eliminated profits which could otherwise have been available to him as a shareholder. Apparently one or more of the parties felt it would be best, for all involved, if Spiral Paper simply bought Jack out of the corporation. As early as 2011, Spiral Paper hired an appraiser to determine the buyout value of Jack's shares. In August 2011, the appraiser concluded the shares had a fair market value of $576,600. In 2012, this value was apparently increased to $616,700.

In March 2012, Jack offered to sell his shares back, for more than 150 percent of their appraised value. He gave George Jr. a one-page written document entitled, "OFFER TO SELL AND REASONS FOR PURCHASE." The letter began, "Dear George: [¶] I am offering to sell my shares in [Spiral Paper] for the amount of [$956,380.[3]] Below are a number of reasons why I believe you should accept my offer." Jack's first (and only) enumerated reason is that "[i]n no way does the appraisal reflect the true value of my

---

[3]      The amount typed is $1,003,460, but a handwritten footnote (apparently by Jack) says that it is to be reduced by $47,080, "for a grand total 956,380."

4

shares or the corporation per se." Jack stated that inventory should be much higher than valued by the appraiser, "[i]f you have been doing your job correctly, as I assume you are." He also took the position that the appraiser erred in valuing the corporation's money-making ability, stating, "There are years under your tenure where the corporation showed very little profit and even a loss in some years. One of the reasons for this is a staff of seven individuals who are overpaid by $500,000, when half of these individuals are not needed for the business and some are paid even though they were not at work." Jack identified several categories of unnecessary expenses, including directors' and "counseling" fees, travel expenses, and business trips. In closing, Jack stated, "All of the above, and more, indicate that the value of my shares is greater than what the appraiser valued them at. Especially because the shares are much more valuable to you (and me) because we would never have to worry about being bought out at the sweet deal that you will be getting if you accept my offer to sell at [$956.380.] I reserve the right to withdraw this offer at any time after April 9, 2012."

Spiral Paper accepted the offer. On March 30, 2012, George Jr. countersigned the letter, writing, "Dear Jack, [¶] Spiral Paper accepts your offer and agrees to pay $956,380.00." The acceptance was hand-delivered to Jack.

The sale was never consummated. In June 2012, counsel for Spiral Paper sent counsel for Jack a formal seven-page stock re-purchase agreement and general release. Jack did not execute the agreement. He claims that he did not do so because the written agreement included a general release of all claims, which was never a term of his March 2012 offer. Jack takes the position that the June 2012 multi-page document was a counter-offer, which voided any acceptance of his original offer.[4] Spiral Paper, however, sought to enforce the March 2012 agreement, without regard to the June 2012 attempt to formally set forth its terms.

---

[4] We note that a key fact occurred between the March 2012 agreement and its June 2012 repudiation: George Sr.'s death in May 2012.

4.      *The Pleadings*

On October 18, 2012, Jack filed his complaint against George Jr. and related parties. He alleged 12 causes of action, which can be characterized as raising two main assertions: (1) breach of, and intentional interference with, the 1972 Agreement; and (2) mismanagement of Spiral Paper to the advantage of George Jr. and his family and the disadvantage of Jack. In this latter category, Jack specifically alleged that George Jr. and his family paid themselves excessive salaries which deprived him of dividends he should have received.

On December 14, 2012, Spiral Paper filed a cross-complaint against Jack, seeking specific performance of the 2012 Agreement to sell Jack's stock back to the corporation.

5.      *The Trial*

The case proceeded to trial. A jury was empanelled. While the limited record before us is silent on the point, it appears that the court chose to conduct a bench trial of the equitable issues, such as the cross-complaint for specific performance, simultaneously with a jury trial of the legal issues.

6.      *Ruling, Statement of Decision, and Judgment*

At the close of the evidence, argument was heard, and the trial court ruled that there was no breach of the 1972 Agreement and that the March 2012 Agreement should be specifically enforced. In light of those two rulings, the court determined there were no issues remaining for the jury and ordered the jury discharged. Jack requested a statement of decision. The court indicated that Jack's counsel should provide a proposed statement of decision, with defendants' counsel to respond with objections and its own proposed statement of decision. Defense counsel filed a proposed statement of decision which was signed by the court. It does not appear from the record that Jack ever filed a proposed statement of decision, nor filed objections to defendants' proposed statement of decision.

6

The statement of decision reached six issues: (1) alleged breaches of the 1972 Agreement are barred by the statute of limitations; (2) the transfer of shares to George Jr. was permitted under the 1972 Agreement; (3) the 2012 Agreement is the controlling agreement between the parties, superseding any continuing legal effect of the 1972 Agreement; (4) the 2012 Agreement bars all of Jack's claims, except for receipt of $956,380 in exchange for his shares; (5) Jack breached the 2012 Agreement, and no defendant breached it; and (6) Jack and his expert witness were not credible on material issues.

Judgment was entered. On the cross-complaint, the 2012 Agreement was to be specifically performed; Spiral Paper was to deposit the purchase price, and Jack was to deposit his stock into escrow, which would effect the exchange. Judgment was entered in favor of defendants on Jack's complaint. Jack filed a timely notice of appeal.

## DISCUSSION

On appeal, Jack argues the court made numerous prejudicial errors, in its rulings on pretrial discovery motions, motions in limine, and its ultimate resolution of the case. We address Jack's contentions chronologically.

1.    *Pretrial Discovery Rulings*

Jack challenges two of the trial court's discovery rulings.[5] The court denied Jack's motion to deem admitted numerous requests for admission (RFAs) and denied Jack's motion to prevent George Jr. from asserting the attorney-client privilege at deposition.

A.    *Motion re Matters Deemed Admitted*

Jack propounded substantial discovery to all defendants he named in his complaint. The RFAs he propounded to each individual defendant were identical in all

---

[5]    Some of these rulings were made by judges other than the judge who presided over the trial.

material respects. The defendants responded with a joint response, which each individual defendant verified. However, the verifications were not based on personal knowledge, but instead stated, "I am informed and believe and on that ground allege that the matters stated in the foregoing document are true and correct." Meet and confer letters were exchanged. Jack sought verifications based on personal knowledge; defense counsel responded that only George Jr. and, to a lesser extent, Summer, had personal knowledge – the remaining defendants had answered the discovery based on what they knew from George Jr. and Summer. No agreement regarding verifications could be reached.

Jack moved to deem the RFAs admitted, on the basis that defectively-verified responses were the equivalent of unverified responses, which themselves were the equivalent of no responses at all.

A hearing was held. After the hearing, the court concluded that both parties had reasonable arguments, and that a simple solution existed. The court stated that, in response to *each individual RFA,* those defendants without personal knowledge should indicate that they are informed and believe their answer is correct, which would then enable those defendants to execute unconditional verifications. The court recognized that, in those circumstances, the verification would be no more than an affirmation that it is true and correct that the defendant has responded to the RFA on information and belief. At the same time, defendants who did have personal knowledge with respect to any particular RFA answer would unequivocally verify those answers. Supplemental responses and verifications were provided in accordance with the court's ruling.

Jack takes no issue with these amended responses on appeal. Instead, Jack argues that the court erred in not initially granting his deemed admitted motion outright, on the basis that he was entitled to such a ruling as a matter of law, because defendants' initial responses were the legal equivalent of no responses at all. We disagree.

Preliminarily, we note that Jack, by failing to include defendants' opposition to his deemed admitted motion in his appellant's appendix, has provided an inadequate record on appeal. (See Cal. Rules of Court, rule 8.124(b)(1)(B) [appellant's appendix must contain any filed document necessary for proper consideration of the issues, including

8

any item that the appellant should reasonably assume the respondent will rely on].) We nonetheless briefly address Jack's argument on the merits.

If the party responding to RFAs fails to timely respond, the requesting party may move for an order that the RFAs be deemed admitted. (Code Civ. Proc., § 2033.280, subd. (b).) The court must make that order, unless it concludes that the responding party served a response that is in "substantial compliance" with the statutes. (Code Civ. Proc., § 2033.280, subd. (c).) The statutes do not define "substantial compliance," and there is little case authority interpreting it. (*St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 778.) While it has been held that *unverified* responses are the equivalent of no response at all (*Appleton v. Superior Court* (1988) 206 Cal.App.3d 632, 635-636) and therefore not in substantial compliance (*Allen-Pacific, Ltd. v. Superior Court* (1997) 57 Cal.App.4th 1546, 1549, 1557), no court has addressed whether a response which has been verified *on information and belief* is in substantial compliance.

We review a trial court's order on a discovery motion for abuse of discretion. (*St. Mary v. Superior Court, supra,* 223 Cal.App.4th at p. 772.) We conclude the trial court did not err in its implied conclusion that defendants' responses to the RFAs were in substantial compliance, given the limited modification it ultimately ordered, which Jack apparently accepted as sufficient, as he neither objected to the court's solution, nor filed a further motion to deem matters admitted after defendants complied with the court's order.

B.     *George Jr.'s Assertion of Attorney-Client Privilege*

George Jr. was designated as a non-retained expert, on issues such as the reasonable compensation of employees. Jack took George Jr.'s deposition; George Jr. was deposed both as a party and as an expert. At the deposition, George Jr. was asked about the nature of his discussions with counsel regarding his expert testimony. George Jr. asserted the attorney-client privilege. After George Jr. asserted the privilege to other, similar questions, Jack terminated the deposition.

Jack then moved for an order to compel George Jr. to complete his expert deposition without asserting the privilege. Jack argued that, by designating George Jr. as

9

an expert and permitting him to testify as such at deposition, George Jr. waived the attorney-client privilege. (See *Shooker v. Superior Court* (2003) 111 Cal.App.4th 923, 925.) The court did not disagree that the privilege *could* be waived by a party testifying as an expert, but found that it had *not yet* been waived by the deposition testimony given by George Jr. to that point. The motion was therefore denied.[6]

Jack argues the trial court erred in denying his motion, arguing that the ruling was prejudicial because it deprived him of the opportunity to fully cross-examine George Jr. as an expert, which, in turn, gave defendants an unfair advantage at trial. Assuming, without deciding, that the trial court should have granted the motion, Jack has failed to establish any prejudice. The record on appeal does not include any of George Jr.'s testimony; indeed, there is nothing to show that George Jr. testified as an expert at trial *at all*.[7] As such, Jack has failed to establish a basis for reversal.

2.      *Motions in Limine*

Jack next asserts as error the trial court's failure to rule upon certain motions in limine. First, prompted by the trial court's initial ruling that George Jr. had not given sufficient expert testimony to waive the attorney-client privilege, Jack moved in limine to prevent George Jr. from testifying as an expert at trial. He also moved, ex parte, to compel defendants to either withdraw George Jr. as an expert or waive his attorney-client privilege. The trial court indicated that it would take the matter up at the time of trial. Second, Jack moved to prohibit Sarah, Emily and Darci from testifying at trial to any factual matter of which they had previously denied, in discovery, having personal

---

[6]     This resulted in George Jr.'s continued deposition, further assertion of the privilege, and additional motions, which we discuss later.

[7]     Jack points to the trial court's statement of decision, which stated that the court concluded that Jack's expert was not credible. But, nowhere in the statement of decision does it indicate that George Jr. testified as an expert, as opposed to being a percipient witness.

10

knowledge. The limited record indicates no ruling on those motions, although Jack called Sarah, Emily and Darci to testify at trial.

Jack argues that the trial court's failure to rule on all of these motions constituted prejudicial error. We disagree. A motion in limine can preserve an appellate claim "so long as the party objected to the specific evidence on the specific ground urged on appeal at a time when the court could determine the evidentiary question in the proper context." (*People v. Solomon* (2010) 49 Cal.4th 792, 821.) The trial court was within its discretion to wait and determine whether any particular testimony given by George Jr. constituted expert testimony which was to be barred; similarly, the court was within its discretion to wait and see whether any particular testimony given by Sarah, Emily or Darci addressed topics on which they had previously represented they lacked knowledge. On appeal, Jack does not argue that Sarah, Emily and Darci testified on any topic on which they had denied personal knowledge. Instead, he argues that they should not have been permitted to testify *at all*, based on his implied assumption that the discovery he had propounded toward them addressed every possible topic on which they could conceivably give relevant testimony. This is simply not true. They could have testified to the family relationships, the jobs they held at Spiral Paper, the hours they saw others work, and numerous other topics relevant to the litigation, but not covered by Jack's discovery. Given the lack of a reporter's transcript we have no way of ascertaining the testimony of these three witnesses, and no way of assessing prejudice in the trial court's denial of the motions in limine. Any alleged error on appeal is therefore waived.

3.      *The Court's Resolution of the Case*

Jack raises numerous challenges to the trial court's resolution of the case. He challenges the procedure used by the court (equitable court trial on specific performance); the result reached by the court (granting specific performance of the 2012 Agreement); the effect of the court's result (mooting other issues); and the manner of expressing its result (particular language in the statement of decision). We find no reversible error.

11

## A.    *Specific Performance Requires a Court Trial in Equity*

Jack argues on appeal that the court lacked authority to dismiss the jury and enter judgment.  He similarly argues that the court usurped the jury's role as sole finder of fact.  Jack's brief completely overlooks the factfinding powers of the court in trying the equitable cause of action for specific performance.

There is no right to a jury trial in an equitable action for specific performance. (*Gregory v. Hamilton* (1978) 77 Cal.App.3d 213, 220.)  Moreover, in a mixed action, raising both legal and equitable claims, a court trial of the equitable claims may obviate the necessity for a jury trial on the legal claims.  (*DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 185.)  Indeed, it is often preferable to try equitable claims first, as this may promote judicial economy.  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1238, 1242.)  Trial of equitable issues often disposes of the legal claims in their entirety. (*Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 156.)  It is within the trial court's discretion to try equitable issues first.  (*Jaffe v. Albertson Company* (1966) 243 Cal.App.2d 592, 609.)  Jack offers no argument that the trial court abused its discretion, and we find none.

## B.    *The 2012 Agreement was Valid and Enforceable*

Jack next argues that, as a matter of law, the 2012 Agreement was not enforceable, either because it was a mere agreement to agree or because the June 2012 draft of a formal agreement constituted a counteroffer which voided any prior acceptance of the 2012 Agreement.

Preliminary negotiations or agreements for future negotiations – so-called agreements to agree – are not enforceable contracts.  (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 213-214.)  However, whether a writing constitutes a final contract or an agreement to agree is a question of fact.  (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 308.)  The issue, as always with contract interpretation, is the mutual intent of the parties.  If the parties understood that the terms of their contract were to be

12

reduced to a formal writing, and the agreement would not become binding until the formal writing was executed, their preliminary understanding is not an enforceable contract. (*Beck v. American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1562.) However, if the evidence shows that the informal writing was to bind the parties, even if a formal document was anticipated, the failure to actually reduce the informal writing to a formal one does not negate the existence or enforceability of the initial contract. (*Harris,* at p. 307.)

Sitting as the trier of fact on the specific performance claim, the trial court heard evidence on this issue and resolved it. To the extent Jack argues that the 2012 Agreement was an unenforceable agreement to agree as a matter of law—an issue which the court purportedly should have resolved in his favor on a motion for judgment on the pleadings – we disagree. We have reviewed the 2012 Agreement itself. Jack made an explicit offer to sell his stock to Spiral Paper for $956,380. Spiral Paper responded in writing, on the same page, that it accepted the offer. There was nothing on the single sheet of paper indicating that the contract was not final until a more formal agreement was executed, or even that a more formal agreement was anticipated at all. Thus, we cannot conclude, as a matter of law, that a more formal agreement was required by the parties. While subsequent communication between attorneys indicated that a formal agreement was attempted, this, at most, raises an issue of fact as to whether Jack and Spiral Paper had mutually intended their agreement not to be binding until a formal agreement was executed. The trial court resolved the issue against Jack on the evidence. Jack does not challenge this finding as unsupported; he cannot, as he has not provided a reporter's transcript on appeal.

Jack's argument that the June 2012 draft of a formal agreement constituted a counteroffer which voided any prior acceptance meets a similar fate. The court concluded, on the evidence, that Jack's offer and Spiral Paper's unconditional acceptance constituted a binding agreement. The June 2012 draft was simply a proposal for a formal agreement; Jack's rejection of the proposal meant that the June 2012 draft did not constitute the parties' agreement, but it had no effect on the existing March 2012

13

contract. Putting it another way, the June 2012 draft was merely a proposed *modification* of the existing contract, one that would have added additional terms and been in more formal form. The fact that the modification was not accepted did not void the contract itself.

### C. *The Court Did Not Err in Interpreting the 2012 Agreement*

As discussed above, a trial court's ruling on equitable issues may moot the need for jury resolution of legal issues. In this case, the court specifically enforced the 2012 Agreement, and concluded that this obviated the need for a jury trial on Jack's remaining claims. First, the court concluded that the 2012 Agreement resolved any of Jack's claims based on the 1972 Agreement. Second, the court concluded that the 2012 Agreement waived Jack's claims based on purported mismanagement of Spiral Paper by George Jr. The court did not err in making these determinations. When a trial court is specifically enforcing a contract, it may be required to reasonably construe the terms of the contract, to give them effect. (See *Mitchell v. Exhibition Foods, Inc.* (1986) 184 Cal.App.3d 1033, 1044, 1046-1047.)

Nor were the court's constructions erroneous as a matter of law. The 2012 Agreement for Jack to sell his shares of Spiral Paper back to the corporation necessarily superseded any rights Jack might have had to recapture George Sr.'s shares under the 1972 Agreement as a shareholder in Spiral Paper.[8] As to Jack's causes of action arising from George Jr.'s alleged mismanagement of Spiral Paper, the 2012 Agreement specifically addresses several such claims – such as the purportedly improper salaries paid to Jack's family and other misdeeds – and indicates that it is because of the value of these claims Jack sought and received a 50 percent premium over the appraised value of his shares. Under the circumstances, substantial evidence supported the trial court's

---

[8]     As such, we need not address Jack's claim that the trial court erred in concluding his claims arising from the 1972 Agreement were barred by the statute of limitations.

14

finding that the 2012 Agreement encompassed a resolution of those "mismanagement" claims.**9**

D. *Jack Waived Claimed Errors in the Statement of Decision*

Finally, Jack asserts there were omissions and ambiguities in the court's statement of decision. First, Jack notes there were omissions, in that the trial court failed to make preliminary findings necessary for an order of specific performance. (*Union Oil Company of California v. Greka Energy Corp.* (2008) 165 Cal.App.4th 129, 134; *Vezaldenos v. Keller* (1967) 254 Cal.App.2d 816, 829.) Second, Jack identifies some apparent inconsistencies in the statement of decision – specifically that the court indicated that its findings were made after having weighed the evidence and assessed the credibility of witnesses (i.e. as fact finder), but also stated that several of those findings were made "as a matter of law."

A statement of decision follows a court trial. (Code Civ. Proc., § 632.) When a statement of decision does not resolve a controverted issue, the doctrine of implied findings assumes the necessary findings were made to support the court's judgment. (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.) A party can avoid this doctrine by bringing omissions and ambiguities to the attention of the court by objecting to the statement of decision or in conjunction with a post-trial motion. (Code Civ. Proc., § 634.) If it fails to do so, it waives the right to claim on appeal that the statement of decision was deficient. (*Fladeboe,* at p. 59.) On appeal, Jack is raising

---

**9** Jack argues that the court erred in concluding that the 2012 Agreement constituted a general release, even though Jack had only identified five specific issues in his March 2012 offer to sell. The court did not conclude the 2012 Agreement contained a general release; it concluded the 2012 Agreement contained a release of the particular claims Jack asserted in his complaint then pending before the court. At no point does Jack identify, with any particularity, any issue on which he introduced evidence of corporate mismanagement which had not also been identified in his offer to sell.

15

omissions and ambiguities in the statement of decision which he failed to raise before the trial court. Those contentions are therefore waived.[10]

## DISPOSITION

The judgment is affirmed. George Jr. and Spiral Paper shall recover their costs on appeal.


                                                        RUBIN, J.

WE CONCUR:



BIGELOW, P. J.



GRIMES, J.

---

[10]      To the extent Jack argues the ambiguities in the trial court's decision indicate a more serious error of law, which is not waived, we disagree. The statement of decision submitted by defendants and signed by the court uses language which refers to the court resolving certain issues *both* as trier of fact and as a matter of law. Jack infers from this that the court improperly resolved factual issues meant for jury resolution as a matter of law. We accept no such inference. The court's dual references may have meant, for example, that George Jr. had factually established the validity of the 2012 Agreement and that as a matter of law and equity he was entitled to specific performance. Even if some of the language in the statement of decision was ambiguous, any uncertainty could have been resolved, if the matter had been brought to the trial court's attention in a timely manner.