Azalea Garden Bd. & Care, Inc. v. Vanhoy, 2009 NCBC 9.

| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| DAVIDSON COUNTY | 06 CVS 0948 |

AZALEA GARDEN BOARD & CARE,
INC.,

          Plaintiff,

    v.

MEREDITH DODSON VANHOY,
Personal Representative of the Estate of
Ricky C. Dodson, Deceased; LARRY S.
GIBSON, NINA G. GIBSON, DANIEL
W. TUTTLE; TIMOTHY D. SMITH; and
HARVEY ALLEN, JR.,

          Defendants.

## ORDER & OPINION

{1}    This matter is before the Court on Defendant Daniel W. Tuttle's ("Tuttle") Motion for Sanctions (the "Motion"), dated July 25, 2008. Defendant Tuttle seeks sanctions pursuant to Rule 26(g) and Rule 37 of the North Carolina Rules of Civil Procedure for Plaintiff's actions in response to discovery concerning expert opinions. The Court heard oral arguments on the Motion on October 7, 2008. Having considered Defendant Tuttle's Motion and Brief in Support, Plaintiff's Brief in Opposition, and the arguments of counsel, the Court hereby **GRANTS** Defendant Tuttle's Motion.

       *Biesecker, Tripp, Sink & Fritts, LLP by Joe E. Biesecker and Christopher A. Raines for Plaintiff.*

       *Spilman Thomas & Battle, PLLC by Jeffrey D. Patton and Nathan B. Atkinson for Defendant Daniel W. Tuttle.*

Tennille, Judge.

# I.
## FACTS

{2}     This is a suit to recover damages for the alleged breach of a contract to purchase a nursing care facility owned by Azalea Garden Board & Care, Inc. ("Plaintiff").  At issue is Plaintiff's response to discovery directed to the expert opinions of David Wagner ("Wagner") and Gene Tarr ("Tarr").

{3}     Wagner was the owner and President of Plaintiff.  He has a law degree, but he has not recently engaged in the private practice of law.  Wagner was actively involved in the negotiations that led to the execution of the contract at issue in this litigation.  In response to interrogatories in this case, he was listed as someone who may provide expert opinions on behalf of Plaintiff.

{4}     Tarr is an attorney in Winston-Salem, North Carolina.  During negotiations for the sale of Plaintiff, Plaintiff was under the supervision of the United States Bankruptcy Court for the Middle District of North Carolina.  Prior to the closing, Tarr sent an e-mail to a partner in his firm who was representing the lender that was financing the purchase of Plaintiff.  The e-mail purportedly expressed Tarr's advice to his partner that certain orders in the bankruptcy proceedings would not prevent Plaintiff from closing the transaction.  Tarr was also listed as someone who may provide expert opinions on behalf of Plaintiff.

{5}     A first action was filed against Defendants in Davidson County in 2002, shortly before expiration of the three (3)-year statute of limitation for breach of contract.  At trial, during Plaintiff's evidence, Plaintiff took a voluntary dismissal without prejudice as to all claims.  One (1) day before the one (1)-year period to re-file expired, Plaintiff filed this new suit.  At the 2002 trial, both Wagner and Tarr were listed as fact witnesses, not experts.

{6}     In the present action, this Court entered a Case Management Order requiring all parties to designate their experts and provide the information required by Rule 26 with respect to disclosure of expert opinions.  (*See* Case Management Order 1, Sept. 10, 2007.)  On August 14, 2007, in response to an interrogatory from another defendant, Plaintiff designated Wagner and Tarr as "possible" testifying

expert witnesses. (Def.'s Br. Supp. Mot. Sanctions 1; Pl.'s Br. Opp'n Mot. Sanctions 4.) Based on these designations, on March 11, 2008, Tuttle served interrogatories and document requests on Plaintiff directed to the expert testimony to be provided by Wagner and Tarr as required by Rule 26(b)(4). (Def.'s Br. Supp. Mot. Sanctions 1–2; Pl.'s Br. Opp'n Mot. Sanctions 5.) Tuttle also noticed Wagner's deposition as an expert for April 29, 2008. (Def.'s Br. Supp. Mot. Sanctions 2; Pl.'s Br. Opp'n Mot. Sanctions 5.)

{7} Plaintiff hand-delivered responses to Tuttle's interrogatories and document requests on April 22, 2008. (Def.'s Br. Supp. Mot. Sanctions 2; Pl.'s Br. Opp'n Mot. Sanctions 6.) Plaintiff responded to Tuttle's discovery requests by, among other things, asserting the attorney-client privilege with respect to Wagner. (Def.'s Br. Supp. Mot. Sanctions 2; Pl.'s Br. Opp'n Mot. Sanctions 6–7.) On April 23, 2008 and April 24, 2008, Plaintiff and Tuttle communicated via e-mail and written letters about the merits of designating "possible" expert witnesses and Plaintiff's assertion of the attorney-client privilege with respect to the basis of Wagner's expert opinions. (Def.'s Br. Supp. Mot. Sanctions 3; Def.'s Br. Supp. Mot. Sanctions, Ex. A–C; Pl.'s Br. Opp'n Mot. Sanctions 6.) In an e-mail dated April 23, 2008, Plaintiff's counsel explicitly declined to communicate with Tuttle's counsel over the telephone. (*See* Def.'s Br. Supp. Mot. Sanctions 3; Def.'s Br. Supp. Mot. Sanctions, Ex. B.)

{8} In a letter dated April 23, 2008, Tuttle explicitly asked Plaintiff whether Tarr had been retained as an expert witness and informed Plaintiff that there is no attorney-client privilege associated with communications related to a witness's service as an expert. (Def.'s Br. Supp. Mot. Sanctions 3; Def.'s Br. Supp. Mot. Sanctions, Ex. A.) In a response letter, dated April 24, 2008, Plaintiff again stated that Wagner and Tarr were identified as "possible" expert witnesses who may testify. (Def.'s Br. Supp. Mot. Sanctions 3; Def.'s Br. Supp. Mot. Sanctions, Ex. A.) The response letter further stated that there had been no communication between Wagner and Plaintiff in Wagner's role as an expert witness, and, indeed, there had been no communication between Plaintiff and Tarr at all. (Def.'s Br. Supp. Mot. Sanctions 3; Def.'s Br. Supp. Mot. Sanctions, Ex. C.)

{9}     On April 25, 2008, Tuttle filed a Motion to Compel seeking an order finding that no attorney-client privilege existed and that Defendant Tuttle was entitled to the discovery sought. (Def.'s Mot. Compel 1; Def.'s Br. Supp. Mot. Sanctions 3.) On May 6, 2008, the Court filed the Second Order on Motion to Compel (the "Second Order").[1] The Second Order stated that because Plaintiff designated Wagner as a testifying expert witness, Plaintiff was required to produce the requested discovery regarding the facts relied upon by Wagner in forming his expert opinions. (Second Order Mot. Compel 1, May 6, 2008.) The Court noted that the responses furnished by counsel up to that point were "deficient in several respects." (Second Order Mot. Compel 1, May 6, 2008.) The Court explicitly stated that Plaintiff's "assertion of the attorney client privilege to shield discovery of any communications with counsel involving [Wagner's] expert opinions [was] misplaced." (Second Order Mot. Compel 1, May 6, 2008.) The Second Order required Plaintiff to produce the requested information relied upon by Wagner in forming his expert opinions within twenty (20) days of entry thereof. (Second Order Mot. Compel 2, May 6, 2008.) The Court also gave Plaintiff twenty (20) days to retain Tarr and provide responses from him regarding his expert opinions and stated that he would not be permitted to testify as an expert if Plaintiff failed to comply with that deadline. (Second Order Mot. Compel 2, May 6, 2008.)

{10}    On May 19, 2008, Plaintiff filed a Motion for Instruction seeking clarification of the Second Order. (Pl.'s Mot. Instruction 1.) In the Motion for Instruction, Plaintiff asserted that Tarr was previously designated as a "possible" expert witness. (Pl.'s Mot. Instruction 2.) The Motion for Instruction sought the Court's guidance on whether Tarr could testify as a fact witness rather than an expert witness. (Pl.'s Mot. Instruction 2.) On May 28, 2008, the Court, in an Order on Motion for Clarification, stated that the Court's prior orders were clear and that the North Carolina Rules of Civil Procedure make no provision for designation of "possible" expert witnesses. (Order Mot. Clarification 1, May 28, 2008.)

---

[1] The First Order on Tuttle's Motion to Compel simply extended the deadline for expert discovery an additional thirty (30) days and noted that the Court would issue a second order on the substance of the Motion to Compel at a later date.

{11}   After the Court's Order on Motion for Clarification, Tuttle sent a letter to Plaintiff on June 5, 2008, again seeking discovery of Wagner in his capacity as an expert witness. (Def.'s Br. Supp. Mot. Sanctions 4; Def.'s Br. Supp. Mot. Sanctions, Ex. H; Pl.'s Br. Opp'n Mot. Sanctions 9–10.) Plaintiff replied in a letter dated June 11, 2008, by withdrawing the designations of Wagner and Tarr as expert witnesses. (Def.'s Br. Supp. Mot. Sanctions 4; Def.'s Br. Supp. Mot. Sanctions, Ex. D; Pl.'s Br. Opp'n Mot. Sanctions 9–10.) The letter stated that upon further review, counsel had determined that Wagner was not qualified as an expert. (Def.'s Br. Supp. Mot. Sanctions 4; Def.'s Br. Supp. Mot. Sanctions, Ex. D.)

## II.

## DISCUSSION

### A.

### RULE 26

{12}   North Carolina courts have inherent authority to impose sanctions. *Couch v. Private Diagnostic Clinic*, 146 N.C. App. 658, 663, 554 S.E.2d 356, 361 (2001). A trial court's inherent "authority encompasses not only the 'power but also the duty to discipline attorneys, who are officers of the court, for unprofessional conduct.'" *Id.* at 665–66, 247 S.E.2d at 362 (*citing In re Hunoval*, 294 N.C. 740, 744, 247 S.E.2d 230, 233 (1977)); *see also Dunn v. Canoy*, 180 N.C. App 30, 45, 636 S.E.2d 243, 253 (2006). For a more limited view of the trial court's authority to sanction, see *Egelhof v. Szulik*, COA08-452 (N.C. Ct. App. Nov. 18, 2008). That limited view, however, is inapplicable where, as here, the motion for sanctions is clearly directed to a violation of Rule 26(g). *See Brooks v. Giesey*, 334 N.C. 303, 317–19, 432 S.E.2d 339, 347–48 (1993) (holding that discovery responses were the subject of sanctions under Rule 26(g), not Rule 11). Unprofessional conduct includes "misconduct, malpractice, or deficiency in character . . . and any dereliction of duty except mere negligence or mismanagement." *Couch*, 146 N.C. App. at 666, 554 S.E.2d at 362. When a court exercises its power to sanction, it is reviewed for abuse of discretion. *Id.* at 663, 554 S.E.2d at 361.

{13}  Expert witnesses are subject to specific rules of discovery under the North Carolina Rules of Civil Procedure.  *See* N.C. R. Civ. P. 26(b).  Generally, the facts known to, and the opinions held by, an expert are discoverable, as are the materials the expert relied upon in coming to his or her opinion.  *See* N.C. R. Civ. P. 26(b)(4), (b)(1).  Expert discovery is expensive, and, if not conducted in the proper sequence, can result in shifting opinions and unfair surprise at trial.  Our rules are designed to flush out what opinions are going to be expressed at trial so that challenges to those opinions can be heard pretrial without wasting the jurors' time.  Responses to discovery that comply with the rules save the parties and the courts substantial time and money.

{14}  Rule 26 also makes special provision for the signing of discovery requests.  *See* N.C. R. Civ. P. 26(g).  Under Rule 26(g):

> The signature of the attorney or party constitutes a certification that he has read the request, response, or objection and that to the best of his knowledge, information, and belief formed after a reasonable inquiry it is: (1) consistent with the rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation . . . .

N.C. R. Civ. P. 26(g).

{15}  To ensure compliance, Rule 26 also provides for sanctions.  "If a certification is made in violation of the rule, the court, upon motion or upon its own initiative, <u>shall</u> impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction . . . ."  *Id.* (emphasis added).  The sanction can be the cost incurred due to the violation, including reasonable attorney's fees.  *Id.*

{16}  A plain-language reading of Rule 26(g) suggests that sanctions under Rule 26(g) are mandatory rather than discretionary.  Rule 26(g)(3) of the Federal Rules of Civil Procedure, while not identical, is similar to North Carolina's Rule 26(g).  The

federal rule states:

> If a certification violates this rule without substantial justification, the court, on motion or on its own, <u>must</u> impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(3) (emphasis added).

{17} While no North Carolina court has spoken to the issue of whether sanctions with respect to Rule 26(g) are discretionary or mandatory, several federal cases are persuasive. *See, e.g., Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 407 (7th Cir. 1998). "Decisions under the federal rules are . . . pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules." *Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989). The court in *Dugan* held, "[u]nlike its Rule 11 counterpart, which now assigns to the discretion of the district court whether to impose sanctions for a violation of the rule . . . , Rule 26(g)(3) still requires that sanctions be imposed in the event of a violation." *Dugan*, 142 F.3d. at 407 (internal citations omitted). Rule 26(g)(3) is "designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." Fed. R. Civ. P. 26, Advisory Committee's Note (1983 Amendment). Additionally, the Eleventh Circuit Court of Appeals has held that "Rule 26(g) makes the imposition of 'an appropriate sanction' mandatory if a discovery request, response, or objection is interposed for an improper purpose." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1545 (11th Cir. 1993). Sanctions under Rule 26(g) serve not only to punish the violator of the rule, but also to deter violations by others. *Mancia v. Mayflower Textile Serv. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008).

{18} In the *Mancia* case, Magistrate Judge Grimm, one of the leading commentators on discovery issues in the federal courts, makes a compelling case for the return to cooperation rather than adversarial discovery in today's complex civil litigation. His entire opinion should be read by all trial lawyers. The following are a few pertinent excerpts from his opinion:

[Rule 26(g)] is intended to impose an "affirmative duty" on counsel to behave responsibly during discovery, and to ensure that it is conducted in a way that is consistent "with the spirit and purposes" of the discovery rules, which are contained in Rules 26 through 37. It cannot seriously be disputed that compliance with the "spirit and purposes" of these discovery rules requires cooperation by counsel to identify and fulfill legitimate discovery needs, yet avoid seeking discovery the cost and burden of which is disproportionally large to what is at stake in the litigation. Counsel cannot "behave responsively" during discovery unless they do both, which requires cooperation rather than contrariety, communication rather than confrontation.

. . . .

Rule 26(g) charges those responsible for the success or failure of pretrial discovery—the trial judge and the lawyers for the adverse parties—with approaching the process properly: discovery must be initiated and responded to responsibly, in accordance with the letter and spirit of the discovery rules, to achieve a proper purpose (i.e., not to harass, unnecessarily delay, or impose needless expense), and be proportional to what is at issue in the litigation, and if it is not, the judge is expected to impose appropriate sanctions to punish and deter.

The apparent ineffectiveness of Rule 26(g) in changing the way discovery is in fact practiced often is excused by arguing that the cooperation that judges expect during discovery is unrealistic because it is at odds with the demands of the adversary system, within which the discovery process operates. But this is just not so.

. . . .

. . . However central the adversary system is to our way of formal dispute resolution, there is nothing inherent in it that precludes cooperation between the parties and their attorneys during the litigation process to achieve orderly and cost effective discovery of the competing facts on which the system depends.

. . . .

. . . A lawyer who seeks excessive discovery given what is at stake in the litigation, or who makes boilerplate objections to discovery requests without particularizing their basis, or who is evasive or incomplete in responding to discovery, or pursues discovery in order to

make the cost for his or her adversary so great that the case settles to avoid the transaction costs, or who delays the completion of discovery to prolong the litigation in order to achieve a tactical advantage, or who engages in any of the myriad forms of discovery abuse that are so commonplace is, as Professor Fuller observes, hindering the adjudication process, and making the task of the "deciding tribunal not easier, but more difficult," and violating his or her duty of loyalty to the "procedures and institutions" the adversary system is intended to serve. Thus, rules of procedure, ethics and even statutes make clear that there are limits to how the adversary system may operate during discovery.

*Mancia*, 253 F.R.D. at 357–63 (internal citations omitted).

{19} Judges and lawyers should resurrect the original intention of the discovery rules, which was to make discovery a more cooperative and less adversarial system designed to reduce, not increase, the cost of litigation. North Carolina's Rule 26(g) was designed to do that and mandates sanctions when violations of the rule occur. Our system of civil justice cannot function effectively and economically unless lawyers and judges return to the original intention of the discovery rules and make cooperation, communication, and transparency the cornerstones of the discovery process.[2]

{20} Under certain circumstances, counsel is required to supplement previous discovery responses when new information is acquired. *See* N.C. R. Civ. P. 26(e). Of particular importance to this litigation, Rule 26(e)(1) requires a party to seasonably supplement his response to any question that addresses "the identity of each person expected to be called as an expert witness at trial." N.C. R. Civ. P. 26(e)(1). Moreover, a party has an affirmative duty to seasonably amend prior responses that were true when made but are no longer true and "the circumstances are such that a failure to amend the response is in substance a knowing concealment." N.C. R. Civ. P. 26(e)(2).

{21} Plaintiff's brief cites *Bryson v. Sullivan*, 330 N.C. 644, 401 S.E.2d 327, for

---

[2] The Court also notes here that Plaintiff's counsel refused oral communication with Tuttle's counsel, making resolution of the discovery disputes between them far more difficult. What resulted was needless motion practice which wasted the parties' resources and the Court's time. (*See* Def.'s Br. Supp. Mot. Sanctions 3; Def.'s Br. Supp. Mot. Sanctions, Ex. B.)

the proposition that sanctions are not appropriate if the discovery response was reasonable. (*See* Pl.'s Br. Opp'n Mot. Sanctions 10 (*citing Bryson*, 330 N.C. at 656, 401 S.E.2d at 333 (1992).) The Supreme Court's opinion in *Bryson* begins, however, by stating "[t]his case considers the propriety of sanctions under N.C. R. Civ. P. 11(a)." *Bryson*, 330 N.C. at 329, 412 S.E.2d at 650. The decision in *Bryson*, therefore, is not relevant to the Motion before the Court.

{22}  Similarly, Plaintiff cites *Miltier v. Downes*, 935 F.2d 660 (4th Cir. 1991), which holds that "'counsel do[es] not have to be right on their legal positions to avoid sanctions, but only reasonable.'" (Pl.'s Br. Opp'n Mot. Sanctions 10–11 (*quoting Miltier*, 935 F.2d at 663).) The opinion in *Miltier* discusses sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See Miltier*, 935 F.2d at 661–65. Rule 11 of the Federal Rules of Civil Procedure, however, does not apply to discovery. *See* Fed. R. Civ. P. Rule 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.") Accordingly, *Miltier* also fails to address the issue raised by the instant Motion.

{23}  The Motion before the Court is a motion for sanctions under Rules 26(g) and 37, and it must be treated as such. Consequently, the *Bryson* and *Miltier* decisions, and other authority involving Rule 11, are not relevant to this Motion.

{24}  The Court now turns to Plaintiff's conduct in light of the language and purpose of Rule 26(g). In response to an interrogatory, Plaintiff identified Wagner and Tarr as potential expert witnesses. It is clear from Mr. Biesecker's letter of April 24, 2008, that he had not communicated with Tarr in any manner about acting as an expert. (*See* Def.'s Br. Supp. Mot. Sanctions, Ex C.) Nor does it appear that Wagner prepared any expert opinions prior to being designated as an expert witness.

{25}  According to Plaintiff's Brief in Opposition to Tuttle's Motion for Sanctions, Wagner and Tarr were designated as "possible" experts <u>assuming</u> that "it was or should have been clear to all involved in the litigation that neither Mr. Tarr nor Mr. Wagner were retained by Azalea Garden as experts or had prepared expert reports

for Azalea Garden." (Pl.'s Br. Opp'n Mot. Sanctions 7.) Just how defense counsel was to make that leap of faith is unclear. Moreover, exactly how defense counsel would know that Wagner and Tarr would not later form opinions, prepare reports, and testify is also unclear. Tuttle's counsel responded in the only way possible to protect their client's interest: they sent discovery to find out what opinions would be expressed and the basis for each opinion. Had they not done so, they ran the risk of being blindsided at trial by opinions they had not prepared to counter.

{26} It appears that Plaintiff's counsel thought they could somehow cloak the fact testimony of both Wagner and Tarr with the aura of expert testimony just because they were both lawyers, converting fact testimony from the previous litigation to legal expert opinions in this litigation without complying with the Rule 26 provisions governing expert testimony. In Tarr's case, that would be done without paying him as an expert. The designations of Wagner and Tarr as experts apparently occurred without any contemplation of the rules regarding disclosure of expert opinions or the potential partial waiver of the attorney-client privilege by calling the client as an expert.

{27} In addition, in a letter dated June 11, 2008, Plaintiff's counsel subsequently determined that Wagner did not qualify as an expert to give the opinion desired. (*See* Def.'s Br. Supp. Mot. Sanctions, Ex D.) There exists no explanation of what inquiry was made that produced new facts to warrant his withdrawal as an expert. Plaintiff's counsel had an obligation to make a reasonable inquiry into Wagner's qualifications as an expert <u>before</u> designating him as an expert. *See* N.C. R. Civ. P. 26(g). Plaintiff's counsel had represented Wagner for years, and they were familiar with his background and qualifications.[3]

{28} In summary, Plaintiff and Plaintiff's counsel violated Rule 26(g) by (1) designating Wagner as an expert without an intention of having Wagner prepare any expert report containing his opinions and the basis therefore, (2) failing to make inquiry into Wagner's qualifications to give any expert opinions, and (3)

---

[3] The Court notes that Wagner testified that he was a "semi-retired lawyer" who did "very little legal practice." (Wagner Dep. 15:20−16:40, Apr. 5, 2004.)

designating Tarr as an expert without even having communicated with Tarr. Whether intended or not, those actions did cause delay and undue expense for Tuttle and Tuttle's counsel. The conduct was unreasonable under the circumstances. It was more than mere negligence.

{29} Those are not the only actions, however, which caused the Court concern and violated Rule 26(g). Before withdrawing Wagner as an expert, Plaintiff's counsel objected to production of information Wagner may have relied upon in forming his opinions on the basis of the attorney-client privilege. (*See* Def.'s Br. Supp. Mot. Sanctions 2; Pl.'s Br. Opp'n Mot. Sanctions 6–7.) That reliance was totally unfounded in the law. If Wagner formed an opinion based upon information or instruction from his lawyer, that information is discoverable. Tuttle's counsel brought that to the attention of Plaintiff's counsel before filing any motion to compel. Plaintiff did not, however, waiver in objecting to the proper discovery until ordered to do so by the Court. Plaintiff's counsel ended up withdrawing Wagner as an expert, rather than run the risk of disclosing attorney-client communications.

{30} It is clear that designating a client as an expert can result in at least a limited waiver of the attorney-client privilege. Rule 26(b)(4)(a)(1) states:

> A party may through interrogatories <u>require</u> any other party to identify each person whom the other party expects to call as an expert witness at trial, <u>to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.</u>

N. C. R. Civ. P. 26(b)(4)(a)(1) (emphasis added). Undoubtedly, the "grounds for each opinion" include information Wagner obtained from Plaintiff's counsel. Ultimately, Plaintiff's counsel cites no North Carolina law to support a reasonable belief that Plaintiff's objection to producing communications between counsel and Wagner as an expert witness was reasonable or consistent with the rules or existing law.

{31} Plaintiff relies on *Shooker v. Superior Court*, 111 Cal. App. 4th 928 (2003), for the proposition that it is permissible to designate a client as an expert and later withdraw the designation. *See* 111 Cal. App. 4th at 928. *Shooker*, however, was

not a sanctions case. Rather, it was a case in which the court held that the attorney-client privilege had <u>not</u> been waived based upon a timely withdrawal of the expert designation. *See Shooker*, 111 Cal. App. 4th at 930. That is not the issue before this Court. Tuttle is not seeking to enforce a waiver of the attorney-client privilege. Plaintiff did not withdraw Wagner as an expert until it had lost its argument on the Motion to Compel. Indeed, *Shooker* actually supports the rule that a limited waiver of the attorney-client privilege occurs when the client is called as an expert. *See Shooker*, 111 Cal. App. at 928–929. The objection made by Plaintiff in this case had no basis in the rules or existing North Carolina case law, nor was it an argument for the modification of existing law. It was just wrong. Had Wagner and Tarr been withdrawn as experts prior to Plaintiff's unfounded objections to discovery and the hearing on the Motion to Compel, Tuttle would have had little complaint. Instead, Tuttle was forced to file a motion to compel and respond to a motion for clarification.

{32} The Court also notes with concern Plaintiff's counsel's refusal to even talk to Tuttle's counsel on the telephone. (*See* Def.'s Br. Supp. Mot. Sanctions 4; Def.'s Br. Supp. Mot. Sanctions, Ex. B.) Lawyers have a responsibility and a duty to their clients, the Court, and opposing counsel to communicate openly and civilly with each other. A failure to do so is a breach of their professional duties and results in unnecessary delay and expense to the parties and the Court.

{33} Plaintiff waited until the last day before the three (3)-year statute of limitations was to expire before filing its original suit. Plaintiff then took a voluntary dismissal without prejudice during the first trial and waited until the last day of the one (1)-year grace period to reinstitute the suit. The estate of one (1) co-defendant has been dismissed, and an appeal taken from that Order prevents trial of this action. Defendant Allen has been dismissed on summary judgment. The breach of the contract was alleged to have occurred in September of 1999, almost ten (10) years ago. This has been an expensive process for all concerned. The creation of unnecessary expense by failing to make any reasonable inquiry before filing (1) interrogatory responses or objections and (2) objections that were

unsupported by the rules or existing case law unreasonably added to that expense.

{34}   Based on the foregoing, the Court finds that Plaintiff violated Rule 26(g) and is subject to mandatory sanctions.

B.

RULE 37

{35}   The Court also finds that an award of expenses would be available to Tuttle under Rule 37.  Rule 37 provides that if a party is forced to go to the court and file a motion to compel discovery, and the motion to compel is granted:

> the court <u>shall</u>, after opportunity for hearing, require the party . . . whose conduct necessitated the motion . . . to pay the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

N.C. R. Civ. P. 37(a)(4) (emphasis added).  In this case, Tuttle filed the Motion to Compel on April 25, 2008.  By Order dated May 6, 2008, the Court granted Tuttle's Motion to Compel.  Based on the record before the Court, there is no evidence that opposition to the Motion to Compel was substantially justified or that the circumstances make an award of expenses unjust.  Consequently, an award of expenses under Rule 37 is proper.

III.

CONCLUSION

{36}   In the first trial of this case, Wagner and Tarr were treated as fact witnesses.  When discovery ensued after the second case was filed, Plaintiff elected to list Wagner and Tarr as experts even though neither had prepared or expressed any expert opinions.  In Tarr's case, there had been no communication with him at all.  Plaintiff's counsel had no idea what expert opinions Tarr might express.  In Wagner's case, Plaintiff refused expert discovery relying on the attorney-client privilege.  That reliance was unsupported by existing rules and case law.

{37}   The fact that both Wagner and Tarr were designated as "possible" expert witnesses did not change either Defendant's necessity of conducting discovery concerning their opinions or Plaintiff's obligation to comply with Rule 26. When it became clear to Plaintiff's counsel that they had to comply with Rule 26, they withdrew both Wagner and Tarr as experts. In the interim, Tuttle was put to the expense of ferreting out, through discovery and motions, what opinions would be offered, the basis for those opinions, and the qualifications of the experts who planned to express those opinions at trial. Ultimately, Plaintiff's counsel conceded that Wagner, who they had represented for years, did not qualify as an expert under Rule 26(b)(4).

{38}   The discovery responses filed by Plaintiff were not based upon any reasonable inquiry, and the objections that prolonged the battle were not based upon any rule or existing case law. Plaintiff's designation of Wagner and Tarr as possible expert witnesses finds no support in law or logic. The actions of Plaintiff and its counsel caused Tuttle unnecessary expense. Sanctions under Rule 26(g) are mandatory and also justified under Rule 37.

{39}   Based on the foregoing, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED**:

1. Defendant Tuttle's Motion for Sanctions is **GRANTED**.
2. Tuttle's counsel shall file with the Court a detailed request for attorney fees specifying the time spent and the services rendered for which reimbursement is sought. Tuttle's counsel shall also include the actual hourly rate charged to and paid by the client for those services.

   **IT IS SO ORDERED**, this 26th day of March, 2009.